UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUIS COLON | No. 3:20-cr-00263-MPS |

**RULING ON MOTIONS TO REDUCE SENTENCE**

The defendant has filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A), arguing that Federal Medical Center ("FMC") Devens, the Bureau of Prisons ("BOP") facility to which he is assigned, does not have the expertise or resources needed to treat his chronic pain stemming from a 2011 motorcycle accident. ECF No. 247. After carefully considering the briefs and medical records, including the defendant's supplemental brief and medical records, I deny the motion, finding that although his medical condition is serious, the defendant has exaggerated somewhat his level of pain and disability, the treatment he has been receiving from FMC Devens is not significantly less effective than the treatment he was receiving before he began serving his term of imprisonment, and, in any event, the Section 3553(a) factors weigh heavily against granting the requested reduction.

**I.    BACKGROUND**

I assume familiarity with the record in this case and provide only enough background and analysis to explain the reasons for my decision.

On July 12, 2022, I sentenced the defendant to 32 months in prison and 3 years of supervised release, with the first 6 months of supervised release to be served on home incarceration, for conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), and unlawful possession of firearms by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). As the judgment suggests, the

1

incarceration component of the sentence was substantially shorter than it would have been had it not been for the defendant's "serious medical conditions." ECF No. 199 at 1. I fully considered those conditions, including spinal and other serious injuries stemming from the defendant's 2011 motorcycle accident, in imposing the sentence and in suspending execution of the sentence to enable the defendant to undergo surgery and other treatment before he reported to prison. *See* ECF Nos. 225, 243. In particular, before sentencing, and then before twice continuing the date for the defendant's self-surrender to FMC Devens, I considered extensive medical records and related information filed by the defendant in connection with various pretrial motions, his sentencing, and the period following his sentencing. *See* ECF Nos. 49, 51, 65, 67, 89, 92, 103, 106, 107, 121, 144, 149, 153, 185, 186, 187, 190, 192, 201, 214, 222-24, 242. These records, which dated back to his 2011 motorcycle accident, detailed that the accident caused significant damage to his ribs and spine and left him with chronic pain in his back, neck, abdomen, and knee. The records reflect that many times over the past decade or so, the defendant has rated this pain as "8/10" or "10/10" or described it in similar terms. *See, e.g.*, ECF No. 144-1 at 28 (4/5/14 medical record describing his abdominal pain as "now 10/10"); *id.* at 35 (6/20/15 medical record stating that "[t]he patient developed sudden onset of sharp [abdominal] pain"); ECF No. 144-2 at 14 (12/21/18 medical record describing "8/10 electrical pain in his back and leg"); ECF No. 185 at 1 (sentencing memo: "In the years prior to his [12/16/20] arrest, Luis's pain had become so unbearable that he was barely able to work . . . ."); ECF No. 144-6 at 2 (10/7/21 medical record describing "low back pain straight across worse to the left . . . Down the left buttocks . . . Into the left hip and down front of the leg into the knee neck pain radiation down bilateral arms in to the fingers, right rib pain . . . Severity . . . 8/10"); ECF No. 223-5 at 7 (6/12/22 physical therapy record: "The [patient] demonstrated uncontrolled post-op pain which limits overall functional

mobility. He rates his pain 10/10."), 4 (8/17/22 occupational therapy record: patient "has chronic neck pain 10/10").

I nonetheless concluded at sentencing that, although I would make a downward departure and further downward variance from the Guidelines range of 70 to 87 months, I still needed to impose a significant prison sentence to reflect the seriousness of the offense, protect the public and deter the defendant. *See* ECF No. 199 at 1. I reached that conclusion because, in spite of the pain and sometimes debilitating conditions reflected in his medical records, the defendant in 2020 still managed to distribute significant quantities of fentanyl disguised as Oxycodone pills and to possess no fewer than 11 firearms in his home, including multiple long guns. My conclusion that a significant prison sentence was necessary to serve these goals found further support in the defendant's criminal record, which included prior sentences for violent and weapons-related offenses, albeit sentences that mostly did not score under the Guidelines because of their age. The defendant was 50 when he committed the offenses for which I sentenced him, suggesting that he was not "ageing out" of criminal activity.

The defendant filed his motion for a sentence reduction on May 8, 2023, only three months after he began serving his sentence. (I had continued his self-surrender date to February 9, 2023.) He argues that FMC Devens, the BOP medical center where he is serving his sentence, lacks the "'expertise or armamentarium necessary to address [his] pain in a correctional setting'" and that he "had already suffered from undertreatment of his pain." ECF No. 248 at 1 (quoting from letter from Dr. Brian Chan). More specifically, he argues that FMC Devens has not enabled him to see a pain management specialist of the type that was treating him before he began serving his sentence, that he has had "uncontrolled pain, usually rated as 10 out of 10 on the pain scale," and that he "has had multiple episodes of high blood pressure and migraines

3

since being at the facility" in part due to changes in his pain medication. *Id.* at 5-6. The defendant has submitted two letters from physicians, neither of whom has examined him, in support of his motion. One of them, after doing nothing more than reviewing the defendant's medical records, opines that "it is unethical to keep Mr. Colon in such a degree of pain and potentially dangerous for his health given his elevated blood pressure and likely deconditioning" and that "[t]he only humane option … would be to allow him to return home where he can continue follow-up with his pain specialist and have access to family members who can assist with his activities of daily living." ECF No. 250-1 at 3.

The Government opposes the defendant's motion, pointing out that the defendant suffered from pain for years before his arrest, that this did not prevent him from selling fentanyl disguised as oxycodone and possessing 11 guns, that the physicians at FMC Devens, who had examined the defendant, were providing him treatment, that the records showed that they disagreed with the opinions of the two physicians whose opinions the defendant had submitted, that he had failed to show that he could not take care of himself in prison, and that he has served only a small fraction of his prison sentence. *See* ECF No. 252.

More recently, the defendant filed a supplemental brief, attaching new medical records showing that another inmate assaulted him at FMC Devens in May 2023, causing him significant pain in his wrists, thumb, and forearms. The assault also exposed the defendant to the risk of hepatitis and HIV, although he has tested negative for both.

## II. DISCUSSION

Section 3582(c)(1)(A) of Title 18 authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the Bureau of Prisons

> to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Although the Sentencing Guidelines contain a policy statement addressed to Section 3582(c)(1)(A), that provision has not yet been updated to reflect recent changes to the statute that allow the defendant, rather than exclusively the Director of the Bureau of Prisons, to file a motion for a sentence reduction.[1]  *See id.* ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 976 F.3d at 238 (citing 28 U.S.C. § 994(t)) (emphasis in original).

So I may reduce the defendant's term of imprisonment after considering the Section 3553(a) factors if (1) he has fully exhausted his administrative remedies or 30 days have passed

---

[1] The Sentencing Commission recently adopted an amendment to the relevant policy statement (USSG § 1B1.13) that will bring it up to date with respect to the amended statute. *See* U.S. Sentencing Commission, Amendments to the Sentencing Guidelines. The amendment will take effect November 1, 2023, absent contrary action by Congress. The portions of the amendment most pertinent to the circumstances here state that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof: … (B) [t]he defendant is (i) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" and "(C) [t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." While the amendment has not yet taken effect, I have nonetheless considered the substance of it, as well as any other circumstances that might warrant a finding of "extraordinary and compelling reasons," in my decision. For the reasons discussed in this decision, I do not find that the defendant's condition "substantially diminishes" his ability "to provide self-care" at FMC Devens or that he is not receiving the specialized medical care he needs.

from receipt by the Warden of his facility of his request for a sentence reduction, and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

The defendant has met the exhaustion requirement because the Warden at FMC Devens denied his request for a reduction in sentence on March 31, 2023. ECF No. 248-2 at 2. But on the merits, I find that the defendant has not shown extraordinary and compelling reasons warranting a reduction of his term of imprisonment and, even if he had, that the Section 3553(a) factors would still weigh against granting the requested reduction.

First, while the defendant does suffer from chronic pain and some activity limitations due to the consequences of his motor vehicle accident, I took full account of these circumstances when imposing the sentence in this case and still found a need for a significant prison sentence, of which the defendant has served only a small fraction. And I am not persuaded that the defendant's condition has significantly worsened during his stay at FMC Devens. As noted, the defendant has for over a decade complained about chronic pain, even severe pain, and so the fact that he has had further bouts of such pain while incarcerated does not present a new circumstance or, in my view, an "extraordinary or compelling reason" to reduce his sentence, given the other considerations involved.

The defendant points to pain-driven spikes in his blood pressure that have taken place during his stay at FMC Devens — a factor on which the defendant's two experts rely heavily. *See* ECF No. 250-1 at 3 (Dr. Chan: "the fact that the patient's pain control has been substandard [at FMC Devens] is supported by the patient's high blood pressure"); ECF No. 250-2 at 6 (Dr. Shen attributing the defendant's high blood pressure to "undertreatment of his pain early on in his incarceration"); *see also* ECF No. 250-3 at 11 (2/13/23 FMC Medical record showing BP 160/100), 20 (2/13/23 record: "The inmate has uncontrolled pain 10/10 causing his BP to be

6

high"), 4 (2/16/23: BP 157/90), 9 (2/14/23 BP 158/96), 22 (2/12/23: BP 190/125), 94 (3/3/28: BP 162/98). But there are lower blood pressure readings in these records too: 134/88 on March 2 and 141/93 on March 16. *Id.* at 98, 161. And the more recent records from FMC Devens uniformly report lower readings: 140/90 on June 13; 118/82 on June 6; 132/82 on July 11; 102/78 on July 15; 130/84 on July 17; and 130/90 on July 24. ECF No. 255 at 6, 12, 94, 101, 82, 100. More broadly, while many of the defendant's blood pressure readings reflect varying degrees of hypertension, this is in line with his blood pressure readings going back a decade, which themselves included some spikes. *See, e.g.*, ECF No. 144-1 at 32 (BP 151/93 on 3/8/15), 39 (BP 140-163/87-106 on 1/22/18); 144-2 at 3 (164/92 on 6/27/2019); 144-3 at 2 (BP 169/107 on 8/21/21); 187-2 at 7 (BP 131/76 on 4/6/22); 187-3 at 4 (BP 142/90 on 6/27/22); 223-1 at 7 (122/80 on 8/1/2022); 223-3 at 3 (BP 132/70 on 8/23/22). Again, when the full picture of his blood pressure indications are considered over time, his current readings — even with the spikes as he dealt with unpleasant adjustments to his medication regimen at FMC Devens— do not amount to extraordinary and compelling reasons to reduce his sentence.

Second, while I do not doubt that the defendant suffers from chronic pain, there is evidence that he has, while at FMC Devens, exaggerated his symptoms at times. For example, after a July 24, 2023 encounter at FMC's health services during which he stated that he had "no . . . significant pain relief with oxycodone ER," ECF No. 255 at 78, the provider who saw him on that date added the following note:

> Addendum to encounter 7/24/23 per discussion with inmate companions . . . patient does not need any assistance with [activities of daily living]. Per inmates he goes to recreation nearly every day. That is an approximate ½ mile walk round trip. This provider has personally seen patient going to recreation at a fast walk.

ECF No. 255 at 77. Further, other provider notes from his medical visits at FMC Devens do not suggest that the defendant is constantly in excruciating pain. ECF No. 255 at 79, 87, 94 (July 24,

7

17, and 11 notes describing the defendant's "affect" as "pleasant, cooperative" and his appearance as "appears well, alert, and oriented x 3"); *id.* at 87 (July 15 note: "The inmate with a [history] of chronic pain is alert and oriented" and stating that all vital signs were within normal limits).

Third, even if I found that the defendant's medical condition and its manifestations during his term of incarceration amounted to extraordinary and compelling reasons by themselves, I would still deny the requested relief because the Section 3553(a) factors weigh heavily against reducing the defendant's prison term. It is worth remembering that, while he was suffering from the same set of chronic medical conditions that continue to plague him, the defendant not only sold a dangerous illegal drug that kills, on average, between 3 and 4 people every day in the State of Connecticut,[2] but he did so while passing it off as a prescription pill, thereby increasing the risk of death by leading a user who did not want or had not developed a tolerance for fentanyl to ingest it. Perhaps even worse, he possessed no fewer than eleven firearms — spread around his home, including a few in his basement garage he "forgot" about. ECF No. 201 at ¶¶ 34-35. Very few of the firearms were secured. *Id.* ¶¶ 31-35. This conduct, too, he engaged in while in essentially the same physical condition he is now — and would be if I reduced his prison sentence to time served — and at an age when the vast majority of convicted felons have long since given up criminal activity. The danger the defendant poses to public safety was one of the reasons that I found that, despite his compromised physical condition, he belonged in prison for a significant period. I remain of that view.[3]

---

[2] 1452 persons died of overdose deaths in Connecticut in 2022 (86% of which, or 1253, involved fentanyl). *See* https://portal.ct.gov/-/media/OCME/Statistics/Calendar-Years.pdf.

[3] The defendant's proposal that I order that he remain on home confinement for an extended period is not an adequate substitute for prison when it comes to protecting the public and reflecting the seriousness of the offense. The defendant distributed fentanyl from his home and possessed guns in his home; an extended term of home confinement would not prevent a return to that activity.

## III. CONCLUSION

For the reasons above, I deny the motions to reduce sentence (ECF Nos. 247, 249).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 15, 2023